UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| CAROLINE K. STERNER,<br><br>        Plaintiff,<br><br>v.<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br><br>        Defendant. | Case No. 20-12099<br>Honorable Matthew F. Leitman<br>Magistrate Judge Elizabeth A. Stafford |

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF NOS. 14, 17)**

Plaintiff Caroline K. Sterner appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court **RECOMMENDS** that:

- Sterner's motion (ECF No. 17) be **DENIED**;
- the Commissioner's motion (ECF No. 14) be **GRANTED**; and
- the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I. **BACKGROUND**

A. **Sterner's Background and Disability Application**

Born in October 1975, Sterner was 42 years old at the time of her alleged onset date. ECF No. 9-2, PageID.62. Sterner had past relevant work as a lawncare worker and landscape supervisor. *Id.* She claimed to be disabled from systemic lupus erythematosus (SLE), thrombotic thrombocytopenic purpura (TTP), and rheumatoid arthritis. ECF No. 9-3, PageID.105.

After the Commissioner denied her disability application initially, Sterner requested a hearing, which took place in May 2019. ECF No. 9-2, PageID.76-102. Sterner and a vocational expert (VE) testified at the hearing. *Id*. In the decision that followed, the ALJ found Sterner not disabled. *Id.,* PageID.55-63. The Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. *Id.,* PageID.46-48. Sterner timely filed for judicial review. ECF No. 1.

B. **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id*. Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id*. If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id*. At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id*. The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sterner was not disabled. At the first step, he found that she had not engaged in substantial gainful activity since the alleged onset date. ECF No. 9-2, PageID.57. At the second step, the ALJ found that Sterner had the severe impairments of SLE with foot pain, TTP, Reynaud's phenomenon, depression, and somatoform disorder. *Id.* Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. *Id.*, PageID.57-59.

Between the third and fourth steps, the ALJ found that Sterner had the RFC

> to perform sedentary work as defined in 20 C.F.R. 404.1567(a) except no more than occasional climbing of ramps or stairs; no climbing of ladders, ropes, or scaffolds; no more than occasional stooping, kneeling, crouching, or crawling; no work at unprotected heights; no work moving mechanical parts; occasional work in humidity or wetness; occasional work in dust, odors, fumes, or pulmonary irritants; occasional work in extreme cold or heat; limited to performing simple, routine, and repetitive tasks but not at a production-rate pace; use judgment in simple work-related decisions; no more than frequent interaction with supervisors, co-workers, or the general public; and can deal with simple work-related decisions.

*Id.*, PageID.59. At step four, the ALJ found that Sterner could not perform her past relevant work as a lawncare worker or landscape supervisor. *Id.*,

4

PageID.62. At the final step, after considering Sterner's age, education, work experience, RFC, and the testimony of the VE, the ALJ also concluded that she could perform jobs that existed in significant numbers in the national economy, including document preparer, account clerk, and ticket counter. *Id.*, PageID.63. The ALJ thus concluded Sterner was not disabled. *Id*.

## II. ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted).

Sterner argues that the Court must remand this matter because the ALJ's explanation for rejecting her treating physician's opinion about her absenteeism and ability to remain on-task is not supported by substantial evidence. ECF No. 17, PageID.2316-2322. She also contends that ALJ committed reversible error by failing to incorporate handling and fingering limitations despite finding severe impairment of her upper extremities. *Id.*, PageID.2322-2323. The Court disagrees and recommends the ALJ's decision be affirmed.

**B.**

ALJs must assess the persuasiveness of a treating source, or any other medical opinion by considering several factors, most importantly, the opinion's supportability and consistency with the record evidence. 20 C.F.R. § 404.1520c(a). The ALJ found that the portion of the opinion provided by Sterner's treating physician, Megan Andrzejak-Riedy, D.O., with restrictions on her ability to stand/walk, sit, or lift/carry, was supported by the medical evidence and thus persuasive. ECF No. 9-2, PageID.62. But he rejected Dr. Andrzejak-Riedy's opinion about how often Sterner would need to be off-task or absent from work, concluding that it was not supported by medical evidence. *Id.*

**1.**

Pointing to numerous references to her persistent fatigue in the medical record, Sterner argues that the ALJ's assessment of the medical opinion's persuasiveness, as it relates to her ability to remain on-task, is not supported by substantial evidence. ECF No. 17, PageID.2320-2322.

In the portion of the discussion dedicated to considering medical opinions, the ALJ justifies finding Dr. Andrzejak-Riedy's opinion about Sterner's need to be off-task unpersuasive with only the brief conclusion that it was supported by "no medical evidence." ECF No. 9-2, PageID.62. But "[c]ourt[s] review[] the record as a whole to determine whether the ALJ's decision is supported by substantial evidence." *Lapka v. Comm'r of Soc. Sec.,* 2021 WL 942752, at *16 (E.D. Mich. Jan. 4, 2021), *adopted*, 2021 WL 733234 (E.D. Mich. Feb. 25, 2021) (internal quotation omitted); *see also Parker v. Comm'r of Soc. Sec.*, 2021 WL 4205060, at *8 (E.D. Mich. July 6, 2021), *adopted*, 2021 WL 3508557 (E.D. Mich. Aug. 10, 2021) ("Because it is proper to read the ALJ's decision as a whole, it would be a needless formality to have the ALJ repeat substantially similar factual analyses in different parts of the decision.") (internal quotations omitted). And an "ALJ can satisfy his duty to consider the medical opinions by '*indirectly* attacking the supportability of the…opinion or its consistency with

other evidence in the record.'" *Id.* (quoting *Stewart v. Comm'r of Soc. Sec.*, 811 F. App'x 349, 352 (6th Cir. 2020)) (emphasis in original).

Here, the ALJ discussed the lack of support for Sterner's complaints of disabling fatigue in the medical record in the paragraphs preceding the discussion of medical opinions. ECF No. 9-2, PageID.60-61. He noted her complaints of extreme fatigue during and right after the acute onset of her TTP, but then highlighted treatment records reflecting improvement with fatigue throughout 2018. *Id.*, PageID.60 (citing ECF No. 9-10, PageID.831, ECF No. 10-2, PageID.1401, ECF No. 10-6, PageID.2014). The ALJ twice emphasized treatment notes showing that Sterner began caring for her two-year-old grandson in May or June 2018, and that Sterner believed that caring for the toddler had helped improve her generalized fatigue and weakness. ECF No. 9-2, PageID.60-61 (citing ECF No. 10-6, PageID.1931).

The ALJ need not repeat the discussion of unsupportive medical records or inconsistent activities of daily living in his persuasiveness assessment for the Court to consider them substantial evidence in support of the ALJ's assessment of the opinion. *See Parker*, 2021 WL 4205060, at *8. That Sterner points to other records to support her claim that her persistent fatigue remained profound is unavailing. Even if substantial

8

evidence would also support the opposite conclusion, the Court may not reweigh the evidence and substitute its own judgment for that of the ALJ. *See Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013); *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (the ALJ, not the reviewing court, must resolve conflicts in evidence). The Court thus finds no reason to disturb the ALJ's decision.

## 2.

Sterner asserts that the records from her hospitalizations in 2017 and 2018 support Dr. Andrzejak-Riedy's opinion about absenteeism. She argues that the ALJ's failure "to explain how a documented history of inpatient hospitalizations and emergency department visits" would not "translate to an inability to maintain regular attendance" constitutes reversible error. ECF No. 17, PageID.2320. The Court disagrees.

"Courts have recognized that an ALJ's failure to consider the effect of numerous hospitalizations on a claimant's ability to work constitutes reversible error." *Minke v. Comm'r of Soc. Sec.,* No. 15-12516, 2016 WL 4253968, at *6 (E.D. Mich. July 18, 2016), *adopted*, 2016 WL 4205992 (E.D. Mich. Aug. 10, 2016) (collecting cases). But the cases remanded for such an ALJ omission all featured plaintiffs with records of numerous and frequent hospitalizations. *See, e.g.*, *Sheldon v. Comm'r of Soc. Sec.*, No.

9

18-CV-12564, 2019 WL 3933743, at *4 (E.D. Mich. July 30, 2019), *adopted*, 2019 WL 3892561 (E.D. Mich. Aug. 15, 2019) (plaintiff spent 55 days in the hospital, and 37 days in a nursing home in a 30-month period); *Minke*, 2016 WL 4253968, at *6 (plaintiff spent all or part of 39 days in the hospital over 16-month period for an average of 2.4 days per month); *Hawke-Dingman v. Comm'r of Soc. Sec.*, 2012 WL 5328674 (E.D. Mich. Sept. 11, 2012) (plaintiff hospitalized for 69 days in less than three years, or more than two days per month).

In contrast, Sterner was hospitalized only twice for her TTP, for eight days in November 2017 and again for ten days in December 2017. ECF No. 9-7; ECF No. 9-11. She was treated in the emergency room for an unrelated skin abscess on her leg in October 2018. ECF No. 10-5, PageID.1800. According to the VE testimony, absences at a rate of one day or less per month are tolerated by employers and thus would not be work-preclusive. ECF No. 9-2, PageID.99. Sterner's two hospitalizations, with no readmissions after nearly 18 months, were neither numerous nor frequent enough to require an explicit assessment of their impact on her ability to work.

Even if the ALJ erred by failing to explicitly discuss Sterner's hospitalizations on her ability to work, remand is not required unless there

is reason to believe that it might lead to a different result. *See Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004). If the case were remanded for the ALJ to address the impact Sterner's hospitalizations might have on absenteeism, the evidence would show that Sterner spent 18 days hospitalized in late 2017, with no later readmissions.[2] As noted above, this de minimis average number of absences from work is not work-preclusive.

    Even if Sterner had averaged more than one day of hospitalization per month, the sheer number of hospital visits alone would not establish disability. *McWhorter v. Berryhill*, 2018 WL 4417746, *5 (E.D. Mich. July 23, 2018), *adopted,* 2018 WL 4390726 (E.D. Mich. Sept. 14, 2018). In *McWhorter*, the ALJ properly concluded that the plaintiff's frequent hospital visits did not preclude work because they involved isolated incidents and were unrelated to chronic conditions requiring ongoing treatment. *Id.* And even frequent hospitalizations related to a chronic severe impairment may not curtail a claimant's ability to perform work on a regular and continuing basis if they were for a limited duration and the condition improved after the

---

[2] There is no record of further hospital admissions through the hearing date in May 2019. Sterner supplies no new evidence of hospitalizations after that, nor does she move for remand under sentence six of 42 U.S.C. § 405(g).

hospitalizations.  *See Bryce v. Comm'r of Soc. Sec.*, 2014 WL 1328277, *3 (E.D. Mich. March 28, 2014).

According to the record evidence, Sterner's condition improved shortly after the inciting event requiring hospitalization, she exhibited marked clinical improvement during her last hospitalization, her post-hospitalizations lab work was consistently normal, and her TTP stayed in remission throughout the relevant period.  ECF No. 9-10, PageID.749, 754, 774, 782, 816-817, 821, 837, 839; ECF No. 9-11, PageID. 998-999, 1003-1004, 1047; ECF No. 9-12, PageID.1063-1064; ECF No. 10-1, PageID.1298, 1305; ECF No. 10-2, PageID.1334, 1336, 1340, 1394, 1400, 1406, 1413, 1418, 1425; ECF No. 10-8, PageID.2247, 2253.  In sum, Sterner's hospitalizations were limited in number and duration, and without recurrence after treatment.  Sterner cannot establish that remanding the case to the ALJ would "serve any useful purpose and cannot establish that the [omitted discussion of her hospitalizations' impact on absenteeism] was anything but harmless error."  *See Kobetic*, 114 F. App'x at 173.  "When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Id.* (quoting *NLRB v. Wyman–Gordon Co.*, 394 U.S. 759, 766 n. 6 (1969)).

## C.

Sterner also contends that the ALJ erred by failing to incorporate any handling and fingering limitations in the RFC. ECF No. 17, PageID.2322-2323. But Sterner does not describe any additional restrictions she would need, and showing she requires a more restrictive RFC is her burden. *See Dixon v. Comm'r of Soc. Sec.,* 2019 WL 4877532, *4 (E.D. Mich. May 17, 2019), *adopted*, 2019 WL 3798096 (E.D. Mich. Aug. 13, 2019). Sterner's argument for greater manipulative restrictions is essentially a request for the Court to reweigh the evidence considered by the ALJ, which is not permitted. *See Cutlip v. Sec. of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). The lack of handling and fingering limitations in the RFC does not support a remand.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Sterner's motion, ECF No. 17, be **DENIED**; that the Commissioner's motion, ECF No. 14, be **GRANTED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Dated: February 16, 2022

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2022.

                                        s/Marlena Williams
                                        MARLENA WILLIAMS
                                        Case Manager